# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RILEY NOONKESTER**, | |
| Plaintiff, | No. 2:06-cv-00306-AK |
| v. | |
| **TEHAMA COUNTY SHERIFF, et al.,** | **ORDER** |
| Defendants. | |

## Background

Riley Noonkester is in civil detention in a California hospital as a sexually violent predator (SVP). His complaint under 42 U.S.C. § 1983 alleges constitutional violations during his periodic confinement at Tehama County Jail in 2003, 2005 and 2006 for re-commitment as an SVP. Noonkester originally sued in 2003 with two co-plaintiffs, but their claims were severed and each was instructed to file an amended complaint. When Noonkester failed to do so, his case was dismissed. A co-plaintiff's case proceeded to summary judgment on many of the same claims, and the magistrate judge made extensive findings and recommendations, Sumahit v. Parker, No. CIV S-03-2605, 2009 WL 2879903 (E.D. Cal. Sept. 3, 2009), that were adopted in full by the district judge, No. CIV

page 2

S-03-2605, 2009 WL 4507723 (E.D. Cal. Dec. 1, 2009).  Given the similarities

between the cases, throughout this order I reference the rulings in <u>Sumahit</u> where

relevant.

Noonkester eventually filed a new complaint.  Defendant TransCor America

filed a motion to dismiss, which was granted.  The other defendants—the county

and its sheriff—moved for summary judgment.  The court now grants in part and

denies in part the motion for summary judgment, and orders mediation.

## Analysis

**1.**  Contrary to local rule 260(b), Noonkester failed to "reproduce the

itemized facts in the Statement of Undisputed Facts and admit those that are

undisputed and deny those facts that are disputed, including with each denial a

citation."  E.D. Cal. R. 260(b).  But because Noonkester is a pro se civil detainee,

the court "must consider as evidence in his opposition to summary judgment all of

[his] contentions offered in motions and pleadings, where such contentions are

based on personal knowledge and set forth facts that would be admissible in

evidence, and where [he] attested under penalty of perjury that the contents . . . are

true and correct."  <u>Jones</u> v. <u>Blanas</u>, 393 F.3d 918, 923 (9th Cir. 2004).

**2.** Noonkester filed his complaint on February 13, 2006. Section 1983 doesn't contain a statute of limitations, so this court applies the forum state's statute of limitations for personal injury actions and its law of tolling. See Canatella v. Van de Kamp, 486 F.3d 1128, 1132–33 (9th Cir. 2007). Under California's two-year statute of limitations, anything that occurred before February 13, 2004, is barred. Cal. Civ. Proc. Code § 335.1. Statutory tolling doesn't apply to civil detainees. See Blanas, 393 F.3d at 927. Equitable tolling is applicable to a "continuously confined civil detainee who has pursued his claim in good faith." Id. at 930; see also Fink v. Shelder, 192 F.3d 911, 916 (9th Cir. 1999). But Noonkester didn't face the types of major obstacles to pursuing his claim found in Blanas, and doesn't offer any explanation for why he failed to file an amended complaint after his first suit was severed, so he doesn't qualify for equitable tolling. Below, I note which claims are barred by the statute of limitations.

**3.** Noonkester alleges that he was treated as a prisoner even though he was a civil detainee. He relies on Blanas for the proposition that civil detainees "are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Blanas, 393 F.3d at 931 (quoting Youngberg v. Romeo, 457 U.S. 307, 321–22 (1982)). Blanas held that, under the Fourteenth Amendment, SVPs awaiting commitment or, like

page 4

Noonkester, re-commitment deserve conditions of confinement that aren't punitive. Id. at 932.  But such detainees are subject to legitimate, non-punitive conditions designed for "ensuring a detainee's presence at trial, maintaining jail security, and effective[ly] manag[ing] a detention facility."  Id.  Under Blanas, if a civil detainee is treated the same as a penal inmate or pretrial criminal detainee, that treatment is presumed punitive.  Id. at 934.  But a defendant's explanation of legitimate, non-punitive purposes can rebut that presumption.  Id.

Conditions of Confinement

SVPs must be housed separately because their convictions for sexual offenses against children leave them at risk of assault from other inmates.  Tehama County is small and its jail doesn't have a separate facility for the occasional SVP housed there temporarily for re-commitment hearings.  So the County houses SVPs in the least restrictive custody available: the Special Unit House (SHU) or "cellside" when the SHU is unavailable.  Clay Decl. ¶¶ 3–5.

When Noonkester was held cellside, he could use the shared dayroom only when no penal inmates were there (for his own protection), and he generally got only an hour per day there, though some days he didn't even get that.  He complains that this amounted to punitive treatment worse than that of penal inmates.  Amended Complaint, Memorandum of Points and Authorities at 5–6, 8.

Under <u>Blanas</u>, because Noonkester received the same or worse access to the dayroom as penal inmates, the treatment is presumed punitive. Defendants allege that Noonkester received extra time in the dayroom when possible, but they present neither specific evidence nor justification for why Noonkester didn't get to use the dayroom whenever no penal inmates were there. <u>Compare</u> Plaintiff Depo. at 106, <u>with</u> Clay Decl. ¶ 16. Defendants haven't overcome the <u>Blanas</u> presumption, and there's a factual dispute here. <u>See</u> <u>Sumahit</u>, 2009 WL 2879903, at *16–17.

Noonkester alleges that, when he was cellside, he was given such "infrequent and sporadic" access to the exercise yard as to qualify as "creating a punitive environment." Oppos. to Summary Judgment at 15. Defendants provide no evidence on what typical treatment was for penal inmates, merely alleging that Noonkester's treatment was "equal or better" than that given to penal inmates, so they haven't overcome the presumption created by Noonkester's allegations of punitive treatment. Clay Decl. ¶ 17. Again, there's a factual dispute. <u>See</u> <u>Sumahit</u>, 2009 WL 2879903, at *16–17.

Noonkester also points to a particular incident in which defendants housed him cellside because they were using the SHU for a high-security pretrial detainee. <u>Sumahit</u> found that vague explanation insufficient, <u>id.</u> at *17; this court does, too.

Noonkester's claim that his waiver from administrative segregation was

improperly elicited is barred by the statute of limitations.  <u>See</u> Amended

Complaint, Exhibit A; Oppos. to Summary Judgment at 10; Clay Decl., Exhibit A.

<u>Transportation</u>

Tehama County contracted with TransCor to handle Noonkester's

transportation between the state hospital and the Tehama County Jail.  While

Noonkester complains about his treatment during those journeys, he doesn't allege

that defendants established any policies producing the conditions he complains

about.  <u>See</u> Amended Complaint, Memorandum of Points and Authorities at 8.

The County can't be held liable for individual contractors' acts of mistreatment.

<u>See</u> <u>Monell</u> v. <u>Dept. of Soc. Servs. of New York</u>, 436 U.S. 658, 694 (1978).

Noonkester also complains about having to wear restraints during transport

between the jail and the courthouse where his re-commitment hearings occurred.

He alleges that he was treated like a prisoner, rather than like a civil detainee,

without justification.  Plaintiff Depo. at 74–78.  Defendants respond that they

restrain all inmates, regardless of classification, during transport to and from court.

Clay Decl. ¶ 23.  <u>Sumahit</u> found that to be insufficient justification in the absence

of any evidence that SVPs pose the same security risks as penal inmates.  2009 WL

2879903, at *10–11.  <u>Youngberg</u>, 457 U.S. at 321, requires courts to "make certain

that professional judgment" was used in restraining civil detainees, and here

defendants offer only vague assertions of their policies.  The court follows <u>Sumahit</u> in finding defendants' explanation insufficient.

But the court also follows <u>Sumahit</u>, 2009 WL 2879903, at *11, in finding that mere transport of a civil detainee alongside penal inmates presents no cognizable harm.

## Lights, Sanitation and Water Temperature

Noonkester's complaints about lights, sanitation and water temperature all arise from his housing outside administrative segregation in 2003 and are barred by the statute of limitations.  Amended Complaint, Memorandum of Points and Authorities at 4.

## Locking Mechanism Failure

Noonkester alleges that the locking mechanism separating his part of the jail once failed, leaving him in danger of assault from penal inmates.  <u>Id.</u> at 7.  This claims doubly fails because Noonkester points to no specific harm, other than passing fear, and doesn't alleged that the lock's failure was a deliberate policy, meaning it was, at most, the type of "negligent act of an official" that <u>Daniels</u> v. <u>Williams</u>, 474 U.S. 327, 328 (1986) (emphasis omitted), held not cognizable under the Due Process Clause.

page 8

Holding Cell

Noonkester complains about an incident during his booking at the jail when he remained in a holding cell for eight hours without heat or a bed.  Amended Complaint, Memorandum of Points and Authorities at 5.  But he doesn't allege any particular harm.

**4.**  Civil detainees' medical care claims are evaluated under the Fourteenth Amendment, but "the Eighth Amendment still provides a floor for the level of protection that SVPs must receive . . . and because the contours of the Eighth Amendment are more defined, Eighth Amendment jurisprudence may provide helpful guidance as to the standards to be applied."  Hubbs v. Cnty. of San Bernardino, 538 F. Supp. 2d 1254, 1266 (C.D. Cal. 2008).  Under the Eighth Amendment, deficient medical care violates the Constitution when there's evidence of "deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  "[P]laintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain . . . [and that] defendant's response to the need was deliberately indifferent . . . ."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks omitted).  Proving indifference requires "showing (a) a purposeful act or failure to respond to a

prisoner's pain or possible medical need and (b) harm caused by the indifference."
Id.

Noonkester claims that jail personnel were deliberately indifferent to his deep vein thrombosis (DVT), cancerous growth and closed esophagus.  Amended Complaint, Memorandum of Points and Authorities at 2, 7.  After requesting a doctor, Noonkester waited over six weeks before one visited him, and he then told Noonkester he'd have to wait until he was taken to the state hospital to receive care.  Objections to Magistrate Judge's Findings at 6; Plaintiff Depo. at 41.  That return was delayed by a flu outbreak at the hospital, making for an overall delay of about ninety-eight days.  Oppos. to Summary Judgment at 24–25; Plaintiff Depo. at 114.  Noonkester suffered a heart attack just under three years later and alleges that a doctor told him it could've been related to his delayed DVT treatment.  Plaintiff Depo. at 43–48.  While the County's physician reviewed Noonkester's records and found no harm from the delay, Malan Decl. ¶¶ 8–13, this is a factual dispute.

Noonkester also complains about delays in receiving his medication.  But he can show neither harm from the delays nor deliberateness behind them.  He comes closest to identifying a harm when he claims to have lost fourteen pounds from delays in receiving Marinol, an appetite stimulant, Plaintiff Depo. 27–28, 38, but

that claim is barred by the statute of limitations.  Defendants explain other brief
delays based on their policy of reviewing prescriptions before providing them,
Clay Decl. ¶ 44, and Noonkester identifies no clear harm.

    5.   Upon arrival at the jail, Noonkester was subject to the same strip searches
as penal inmates, raising a presumption that such treatment was punitive.  But
defendants have adequately justified the policy on the non-punitive grounds of jail
safety.  Id. ¶ 47; see Sumahit, 2009 WL 2879903, at *12–13.

    6.   Noonkester complains that he was denied access to Native American
religious services.  Amended Complaint, Memorandum of Points and Authorities
at 4.  But the jail doesn't provide spiritual leaders as a matter of course.  Instead, it
allows inmates to receive visits from clergy upon request.  Clay Decl. ¶¶ 54–55.
Noonkester admits that he never made a request.  Plaintiff Depo. at 54–55.  He also
complains that he was denied access to a sweat lodge, but he doesn't even claim
that he requested such access.  Id. at 57.

    Noonkester alleges that his medicine bag was confiscated and lost, id. at
51–54, but the statute of limitations bars the claim.

    7.   Noonkester and defendants dispute whether he complained about
problems in obtaining access to a working phone to call the attorney representing

him in his re-commitment hearings.  <u>Compare</u> Amended Complaint, Memorandum

of Points and Authorities at 3 & Exhibit A, <u>with</u> Clay Decl. ¶¶ 24–28.  Noonkester

admits that he did have significant phone access to his attorney.  Plaintiff Depo.

at 68–69.  There's "no clearly established right for a detainee to speak to his

attorney by phone as much as he wishes and at times of his choosing."  <u>Warren</u> v.

<u>Kolender</u>, No. 05-cv-2095-LAB, 2009 WL 196114, at *13 (S.D. Cal. Jan. 22,

2009) (citing <u>Valdez</u> v. <u>Rosenbaum</u>, 302 F.3d 1039, 1048 (9th Cir. 2002)).

Moreover, Noonkester shows no harm, as he was able to appeal his commitment

hearings and secure representation in doing so.  Plaintiff Depo. at 72–73.

Noonkester also complains that the jail's law library was inadequate.

Opposition to Summary Judgment at 19; Plaintiff Depo. at 69.  But he fails to meet

the standard established in <u>Vandelft</u> v. <u>Moses</u>, 31 F.3d 794, 797 (9th Cir. 1994),

which requires that an inmate's library access be (1) so limited as to be

unreasonable and (2) the cause of actual injury.

Finally, Noonkester alleges that jail officials opened and read three legal

letters sent to him.  Plaintiff Depo. at 94–96.  Defendants reasonably explain that

all ordinary mail is inspected for contraband and either Noonkester's mail wasn't

properly marked as legal mail or a negligent error occurred.  Clay Decl. ¶¶ 32–35.

**8.**  There's no respondeat superior liability for section 1983 claims, and

page 12

"[l]iability under section 1983 arises only upon a showing of personal participation by the defendant."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Noonkester provides no basis for claiming that Sheriff Parker participated personally in the treatment Noonkester complains about.  Plaintiff Depo. at 24–27. The sheriff therefore can't be liable in his personal capacity.  See Sumahit, 2009 WL 2879903, at *19.

### Conclusion

The court denies summary judgment on Noonkester's claims regarding access to the dayroom and exercise yard while cellside; detention cellside when a high-security pretrial detainee was held in the SHU; delayed medical treatment for DVT and use of restraints during transport between the jail and courthouse.  The court grants summary judgment to defendants on all other claims, and to Sheriff Parker in his personal capacity on all claims.

This court hopes that, as in Sumahit, the parties can productively move to mediation now that the summary judgment stage has concluded.  The court thus orders the parties to contact Sujean Park, this district's Alternative Dispute Resolution Program Director, at (916) 930-4278 to move forward with mediation. The Program Director shall provide a report to this court on the status of mediation efforts no later than October 1, 2011.  A copy of this order shall be sent to:

page 13

Sujean Park
ADR Director
United States District Court
Eastern District of California
501 I Street, Suite 4-200
Sacramento, CA 95814

July 21, 2011

_____

**ALEX KOZINSKI**
Chief Circuit Judge
Sitting by designation